UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CYNTHIA K. PAPP,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Case No. 1:16-CV-111

HON. GORDON J. QUIST

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Cynthia Papp seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-seven years of age on the date of the ALJ's decision (PageID.85, 95, 107.)  She completed high school and was previously employed as a newspaper carrier. (PageID.76, 115, 240.)  Plaintiff filed for benefits on June 28, 2013, alleging that she had been disabled since January 1, 2010, due to shoulder problems and arthritis.  (PageID.85, 95, 210–217.) Plaintiff's applications were denied on December 17, 2013, after which time she sought a hearing before an ALJ.  (PageID.124–145.)  On November 4, 2014, Plaintiff appeared with her counsel

before ALJ Yvette Diamond, during which time both Plaintiff and a vocational expert (VE) testified. (PageID.47–83.) At the hearing, Plaintiff amended her onset date to March 22, 2012. (PageID.50.) On November 29, 2014, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (PageID.107–120.) On December 8, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.33–35.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four.

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at step four.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date.  (PageID.112.)  At step two, the ALJ found that Plaintiff suffered from the severe impairment of osteoarthritis.  (PageID.112–113.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (PageID.113.)  At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk for six out of eight hours; and sit for six out of eight hours.  She can perform unlimited pushing and pulling.  She can frequently climb stairs, balance, stoop, kneel, crouch, and crawl but can only occasionally climb ladders.  She can perform frequent overhead reaching.

(PageID.113.)  Continuing with the fourth step, the ALJ posed the above RFC in a hypothetical question to the VE.[2]  In response to the ALJ's questioning, the VE testified that Plaintiff was able to return to her past relevant work as a newspaper carrier.  (PageID.77–78.)  Relying on the VE's testimony, the ALJ determined that Plaintiff was capable of returning to her past relevant work.  (PageID.115–116.)  Having made her determination at step four, the ALJ completed the analysis and entered a decision finding Plaintiff was not under a disability from her alleged onset date through November 29, 2014, the date of decision.  (PageID.116.)

---

[2] Although not required, It is common practice for an ALJ to rely upon a VE's testimony at step four of the sequential analysis.  *See, e.g.*, *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002).

**DISCUSSION**

**1.     The ALJ's Failure to Use the "Special Technique" Was Harmless Error.**

As noted above, Plaintiff initially alleged she was disabled due to shoulder problems and arthritis. (PageID.85, 95.) Later in a disability appeal form, however, she also alleged disability due to depression. (PageID.296.). And at the hearing, Plaintiff's depression was emphasized as an alleged disabling impairment. (PageID.51.) The ALJ determined, however, that Plaintiff did not have a severe mental impairment at step two. (PageID.113.) Plaintiff claims the ALJ erred at this step, because she should have used the "special technique" found in 20 CFR §§ 404.1520a, 416.920a when assessing the severity of her mental impairment. (PageID.461.)

The agency's regulations provide that "when we evaluate the severity of mental impairments for adults . . . we must follow a special technique at each level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The agency's use of the "special technique" is explained as follows:

> (b) Use of the technique.
>
> > (1)     Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). *See* § 416.908 for more information about what is needed to show a medically determinable impairment. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.
> >
> > (2)     We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.

20 C.F.R. §§ 404.1520a(b), 416.920a(b). The controlling legal authority on this point is the Sixth Circuit's decision in *Rabbers v. Commissioner of Social Security*, 582 F.3d 647 (6th Cir. 2009). The court summarized the use of the special technique at step two as follows:

> At step two, an ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." [20 C.F.R. § 404.1520a(a),] § 404.1520a(b)(1). If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§ 404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 *et seq.*; *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. *Id.* If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. *Id.* § 404.1520a(d)(1). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. *See id.* § 404.1520a(d)(2).

*Id.* at 652–53. The *Rabbers* court further noted that

> [T]he regulations require an ALJ to document the application of this special technique in the written decision. [20 C.F.R. § 404.1520a(d)(3),] § 404.1520a(e). Until 2000, an ALJ was required to complete a [Psychiatric Review Technique Form] and append the form to the decision. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746 (Aug. 21, 2000). Now, the regulations require only an ALJ's written decision to "incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(2). The decision must refer to the "significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* The decision must also "include a specific finding as to the degree of limitation in each of the functional areas." *Id.*

*Id.* at 653–654. The ALJ discussed Plaintiff's depression at step two as follows:

> I also considered the claimant's alleged depression (both singly and in combination with her severe impairments) and found it to be nonsevere. There is little if any mental health treatment for

6

> depression noted in the record. Additionally, the claimant's primary care provider Amy Werling, PA-C classified her depression as mild on August 14, 2013. (Exhibit 3F, p1). Moreover, the claimant testified that she does not see a psychiatrist or a therapist. However, I have fully considered the effects of the claimant's non-severe impairments, particularly in conjunction with the effects of her severe ones, in determining his [sic] residual functional capacity, as is required by SSR 96-8p.

(PageID.113.) It is undisputed that the ALJ did not evaluate Plaintiff's depression under the special technique. The ALJ did not include a specific finding regarding the degree of limitation in each of the functional areas. But that is not the end of the analysis. In an extensive discussion, the *Rabbers* court went on to decline the plaintiff's argument that harmless error should not apply when an ALJ fails to apply the special technique. Instead, the Court noted that in situations in which a court is

> [f]aced with an ALJ's failure to address the [special technique] . . . a reviewing court need only ask whether the record indicates that the claimant's mental impairment would have ultimately satisfied the B criteria. This kind of evidence—evidence regarding the claimant's activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation—is objective, concrete factual and medical evidence that will be apparent in the record, at least in some cases.

*Id.* at 656–57. The court warned, however, that reviewing courts should "exercise caution" in conducting the harmless error analysis, noting that "in some cases . . . the record may contain conflicting or inconclusive evidence relating to the [special technique.] Or it may contain evidence favorable to the claimant that the ALJ simply failed to acknowledge or consider." *Id.* at 657.

Here, the Court finds there to be objective evidence, apparent in the record, that Plaintiff does not satisfy the paragraph B criteria. As an initial matter, an agency consultant explicitly found that Plaintiff did not satisfy the paragraph B criteria, noting that Plaintiff had only mild restrictions in activities of daily living, mild difficulties in maintaining concentration, persistence or pace, and had experienced no repeated episodes of decompensation of extended duration. As noted above, this determination would lead, under the regulations, to a finding that

Plaintiff did not have a severe mental impairment. (PageID.90.) The record supports such a conclusion. In her first function report, dated August 9, 2013, Plaintiff reported only physical difficulties as limiting her ability to work. (PageID.258.) She spent the day doing chores, using the computer, and taking care of her husband. (PageID.259.) She had no problems with her personal care. (PageID.259.) She described her hobbies as including "walking" and "riding bikes" and that she loved "just being with friends and being out doors." (PageID.262.) She stated there were no changes in her social activities since her illnesses began. (PageID.263.) She was able to follow written and spoken instructions. (PageID.263.) On her April 17, 2014, function report, Plaintiff reported "severe depression" as limiting her ability to work. (PageID.308.) She generally alleged more limitations than in her initial report, but still reported she was able to talk on the phone with friends every day, and visit with them about once a week. (PageID.311.) At the hearing she testified she was currently working as a newspaper carrier about eight hours a week. (PageID.54.) She lived with her daughter and grandchildren, though she testified she didn't do anything with them. (PageID.66.) She would ride a bike "occasionally." (PageID.70.) She was able to watch a whole episode of a television program. (PageID.73.) All this points to a finding that Plaintiff could not meet the paragraph B functional criteria.

Important to the harmless error analysis, there is little evidence pointing to a contrary finding. At the hearing, Plaintiff testified that her depression made her just want to lie around and not do anything. But most of her testimony related to her physical complaints. (PageID.73.) The record also contains several notes from Plaintiff's primary care provider, Ms. Amy Werling, a physician's assistant. (PageID.463.) Plaintiff notes, for example, the results of an April 3, 2014, patient questionnaire that found she had severe depression and was a medium risk for suicide. (PageID.364) The record from that date shows Ms. Werling diagnosed Plaintiff with depression and

started her on medication. (PageID.367.) But the record also shows that Plaintiff began to improve after starting this medication. At a June 11, 2014, visit, Plaintiff was described as doing well on the medication. She did not have a depressed mood, or diminished interest or pleasure. (PageID.412.) Two months later, Plaintiff's health questionnaire indicated only mild depression. (PageID.371.) She had an appropriate mood and affect. (PageID.371.) The Court does not doubt that Plaintiff experiences limitations in certain areas of functioning, but the assertion that she meets the functional criteria of paragraph B is not supported by the record. Harmless error accordingly applies. *Rabbers*, 582 F.3d at 656–57

In making the above determination, the Court rejects Plaintiff's attempt to distinguish *Rabbers*. Specifically, Plaintiff notes that in *Rabbers*, the ALJ classified the plaintiff's mental impairment as severe at step two. Here, on the other hand, the ALJ found that Plaintiff's depression did not constitute a severe impairment. The Court finds that this difference does not require a different result. The fact remains that nothing in the record supports a finding that Plaintiff satisfies the paragraph B criteria. To the extent that Plaintiff argues the ALJ's failure to classify her depression as severe is reversible error, the Court disagrees. As Plaintiff concedes, the Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error"). Plaintiff argues, however, that these cases should not apply because the ALJ failed to consider her depression and evidence relating to the impairment past step

9

two. (PageID.463.) She points to the ALJ's statement that "[t]here is little if any mental health treatment for depression noted in the record." (PageID.113.)

It is apparent that the ALJ considered Plaintiff's depression in crafting the RFC. For example, the ALJ noted Plaintiff's testimony, as well as a treatment note from Ms. Werling finding Plaintiff had mild depression, and then specifically explained that she had considered the non-severe impairments in crafting the RFC. (PageID.113.) Later in the RFC discussion, the ALJ noted that Plaintiff received psychiatric medication from Ms. Werling, but did not see a psychiatrist or a therapist for her depression. (PageID.114.) While the ALJ could have, perhaps, more fully discussed this impairment, the ALJ is not required to discuss every piece of evidence, and her failure to do so does not indicate that the evidence was not considered. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

For all the above reasons, the Court finds remand is not appropriate. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ was unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

### 2.     The ALJ's Evaluation of the Opinion Evidence.

On February 14, 2014, Ms. Werling completed an RFC worksheet regarding Plaintiff's limitations. (PageID.360–361.) Among other things, she indicated that Plaintiff's

symptoms would frequently interfere with her attention and concentration. She would need to be able to shift positions at will, and take unscheduled breaks. (PageID.360.) She could only occasionally lift and carry ten pound weights. (PageID.361.) Plaintiff could use her upper extremities for grasping, turning, twisting, and reaching for objects only twenty percent of a workday. She could never perform fine manipulation. (PageID.361.) Plaintiff was not capable of working a full time job on a sustained basis, but were she to work, she could be expected to miss work three to four times a month. (PageID.361.) The ALJ assigned only little weight to the opinion, noting that Ms. Werling was not an acceptable source, and that the opinion was not supported by Plaintiff's activities, the evidence presented, and Plaintiff's testimony. (PageID.115.) Plaintiff argues that the ALJ committed reversible error failing to "provide sufficient rationale to indicate she properly applied the standard outlined in SSR 06-03p" when considering Ms. Werling's opinion. (PageID.466.) The Court disagrees.

Physician's assistants are not "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). There is no "treating physician's assistant rule" and the opinions of a physician's assistant are not entitled to any particular weight. *See Geiner v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). As Plaintiff's correctly notes, SSR 06–3p clarifies how the Social Security Administration "consider[s] opinions from sources who are not 'acceptable medical sources.'" SSR 06–3p, 2006 WL 2329939, at *1 (S.S.A. Aug. 9, 2006)). SSR 06–3p begins by emphasizing the critical distinctions between opinions offered by "acceptable medical sources" and opinions supplied by "other sources." Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *Id.* at *1. The opinions of a physician's assistant fall within

the category of information provided by "other sources." *Id.* at *2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at *1, 4 (citing 20 C.F.R. §§ 404 .1512, 1527, 416.912, 927). The ruling recognizes, however:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). Accordingly, the ruling further provides that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. It further states that the factors for considering acceptable source opinions "can" be applied to these opinions. *Id.* at *4. This standard was easily met here. The ALJ thoroughly discussed the opinion and provided several reasons for assigning it only little weight. The ALJ correctly noted that Plaintiff was a physician's assistant. Contrary to Plaintiff's assertion, the regulations state that a specialization is a relevant factor for consideration. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ also found the opinion was not supported by the record. For example, in August 2013, Plaintiff told Ms. Werling she was able to perform her normal activities, albeit with some pain. (PageID.335.) Dr. Naveed Naeem, a consultative examiner and acceptable source, found Plaintiff was able to "perform all activities of

12

daily living without difficulty." (PageID.324.) She was able to perform activities like picking up coins from a flat surface, button, unbutton, zip, unzip, and tie shoes. (PageID.325.) She could lift fifty pounds occasionally, and twenty-five ponds frequently. She had no postural or manipulative limitations. (PageID.326.) Substantial evidence therefore supports the ALJ's decision to assign only little weight to Ms. Werling's opinion.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** The Court further determines that appeal of this matter would not be taken in good faith. *See Smith v. Comm'r of Soc. Sec.*, 1999 WL 1336109, at *2 (6th Cir. 1999); *Leal v. Comm'r of Soc. Sec.*, 2015 WL 731311, at *2  A separate judgment shall issue.


Dated: December 27, 2016                                   /s/ Gordon J. Quist
                                                                        GORDON J. QUIST
                                                            UNITED STATES DISTRICT JUDGE